UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| Devincci Hourani<br><br>(also known as Devincci Khorani)<br><br>8537 Old Dominion Drive<br>McLean, VA 22101-1107<br><br><br>Plaintiff,<br><br>v.<br><br><br>PsyberSolutions LLC, Allison Blair, Alistair<br>Thomson and Bryan McCarthy,<br><br>Defendants. | Civil Action No.:<br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Devincci Hourani ("Plaintiff") brings this Complaint against the Defendants PsyberSolutions LLC, Allison Blair, and Alistair Thomson and Bryan McCarthy ("Defendants") and states the following:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2.      This Court has personal jurisdiction over the Defendants because a substantial portion of the events that gave rise to Plaintiff's claims transpired in the District of Columbia by Defendants were published in the District of Columbia.

3.      This Court has venue under 28 U.S.C. § 1391(a)(2) because a substantial portion of the events that gave rise to Plaintiff's claims transpired in the District of Columbia, including defendants' publication or republication of the falsehoods causing damage to Plaintiff's well being and reputation.

## PARTIES

4.      Plaintiff Devincci Hourani ("Plaintiff") is a citizen of the Commonwealth of Virginia, who was born in Lebanon.

5.      Defendant Psybersolutions LLC ("Psybersolutions") is a Limited Liability Company formed in the State of Wyoming with its principal office in the District of Columbia.

6.      Defendant Allison Blair ("Blair") is a citizen of the District of Columbia and is the Chief Executive Officer of Psybersolutions.

7.      Defendant Alistair Thomson ("Thomson") is a citizen of the State of New York.

8.      Defendant Bryan McCarthy (McCarthy) is a citizen of the Commonwealth of Pennsylvania.  (Psybersolutions, Blair, Thomson and McCarthy collectively referred to as "Defendants.")

### The Nature of the Action

9.      In this action Plaintiff seeks to recover damages for conspiracy to defame, defamation, false light invasion of privacy, and intentional infliction of emotional distress arising out of a Campaign by Defendants of character assassination of Plaintiff ("Defendants' Campaign") conducted, organized and paid for by Defendants, as set forth below.

### Overview of The Campaign

10.     In June 2014, the following websites and social media sites ("the Online Publications") were established which have subsequently been operated and continue to operate under the control of Defendants Psybersolutions, Blair and McCarthy.

11.     http://www.justicefornovikova.com ("the Justice for Novikova website) is a publicly accessible internet site that as at the date of this statement of case been liked/shared at least 24 times on Facebook and shared at least 50 times on Twitter;

12.     http://rakhataliyev.com ("the Rakhat Aliyev website") is a publicly accessible internet site.

13.     https://wwwfacebook.com/pages/Justice-for-Novikova/1426288637642659   ("the Justice for Novikova Facebook page") is a public page on the social networking platform Facebook, which page has at least 7,797 "likes."

14.     https://www.facebook.com/pages/Prosecute-Aliyev/255609841301308         ("the Prosecute Aliyev Facebook page") is a public page on the social networking platform Facebook, which page has at least 4,938 "likes."

15.     https://www.youtube.com/channel/UCvZtfOmm_cJmo1anZYYB8Nw/feed   ("the YouTube channel") is a public page on the video sharing service YouTube whose videos have been viewed at least 11,954 times.

16.     https://twitter.com/JusticeNovikova ('the Justice for Novikova Twitter account') is an account on the information network Twitter that has at least 461 followers.

17.     https://twitter.com/ProsecuteAliyev ("the Prosecute Aliyev Twitter account") is an account on the information network Twitter that has at least 93 followers.

18.     https://twitter/com/IssamHourani ("the Issam Hourani Twitter account") is an account on the information network Twitter.

19.     On June 19, 2014, an event purporting to be a vigil took place outside the home of the plaintiff's brother in London.

20.     On November 16, 2014, an event purporting to be a demonstration was conducted in Hyde Park in London and outside the Lebanese Embassy in London.

21.     Since November 2014, stickers ("the Stickers") have been posted on lampposts and other street fixtures in the immediate vicinity of the home of the plaintiff's brother in London.

### The Online Publications

22.     Set forth below are illustrative descriptions of the content of the Online Publications that included words and images intended to assassinate the character of Plaintiff, defame him, place him in a false light, invade his privacy and cause him emotional distress.

23.     *On the Justice for Novikova website:[Posted in or around June 2014 under the headline]* **"The Perpetrators"** *[and accompanied by a photograph of the Claimant]:*

> "A Kazakhstan KGB general and two-time ambassador to Austria from Kazakhstan, Rakhat Aliyev seduced young Anastasiya Novikova and impregnated her, taking away Anastasiya's baby daughter before dying a violent death. ...

> "Aliyev's many accomplices include his brother-in-law, Issam Hourani, and Issam's brother, Devincci Saleh Hourani (also spelled Khorani). They are allegedly among the main perpetrators of the crimes against Anastasiya.

> "Witnesses say the Hourani brothers helped keep the woman Aliyev had impregnated, Anastasiya Novikova, captive in Beirut. They own the Beirut apartment where Anastasiya was imprisoned, tortured, raped and murdered.

> "They also own a £7.5 million flat at 10 Lowndes Square in London.

"Supporters of justice in the Novikova case overcame fears of retribution, and held a protest vigil at Lowndes Square on June 19, 2014 *[with a link to a post on the Justice for Novikova Facebook page containing photographs taken of the 19 June event including posters of the Claimant with the word "MURDERER" written above his head]*, to mark the 10th anniversary of Anastasiya's murder.

"Issam took Anastasiya's baby daughter away from her against her will, and gave it to his sister to raise.

"Both brothers helped remove Anastasiya's broken body from Lebanon for its secret burial in Kazakhstan."

24.    *[Posted on 20 June 2014 under the headline,]* **"Protesters rally at Aliyev accomplices' home in London"** *[accompanied by photographs of the 19 June event including posters of the Claimant with the word 'MURDERER' written above his head]:*

"Protesters in solidarity with the #JusticeForNovikova Campaign held a rally in front of the exclusive London apartment building where accomplices of Rakhat Aliyev own a luxury flat, to observe the 10th anniversary of Anastasiya Novikova's death.

"We are gathering on the steps of the London home of Issam and Devincci Hourani here at Lowndes Square, because they owned the apartment in Beirut where, ten years ago today, Anastasiya was hurled to her death," said a Campaign spokesperson.

"Anastasiya was killed on June 19, 2004. About thirty people participated in the protest, unfurling a #JusticeForNovikova banner *[as made available for download on the Justice for Novikova website]* on the front step of the building.

"They held posters of Aliyev and the Houranis as Aliyev accomplices. See the Justice for Novikova Facebook page *[a link to the Justice for Novikova Facebook page]* for pictures, and the #JusticeForNovikova YouTube channel for video *[a link to the video entitled "Why we protested Rakhat Aliyev in London! published on the YouTube channel].*

"To symbolize that they were speaking on behalf of a woman who could no longer speak because she is dead, the *participants* wore masks depicting Anastasiya's face."

25.    *[Posted on 23 June 2014 under the headline]* **"Demonstrator explains the London anti-Aliyev protest":**

"A participant in the June 19 protest against accused murderer Rakhat Aliyev explains in a video why the group chose Lowndes Square, the heart of London's super-rich, to hold the demonstration.

"The video, posted on YouTube *[a link to the YouTube video of the 19 June event]*, shows the anti-Aliyev protest footage of their own event, held to mark the 10th anniversary of the murder of Anastasiya Novikova.

"An accomplice to the murder of Anastasiya Novikova lives right here" in Lowndes Square, the unnamed protester says in the video."

26.    *[Posted on 6 July 2014 under the headline]* **"Police photos show where Anastasiya was killed"** *[and illustrated by a number of photographs and images of official-looking documents]:*

"The police photos show where Anastasiya was killed: at the Beirut apartment owned by Rakhat Aliyev's brother-in-law, Issam Hourani, and Issam's brother, Devincci Hourani. Both Houranis have been close business partners of Aliyev and figure prominently in Anastasiya's captivity, abuse, and death, and the cover-up that followed."

27.    *[Posted on 28 October 2014 under the headline]* **"#JusticeNovikova stickers are still appearing around London"** *[and accompanied by a photograph showing a sticker with the JusticeForNovikova logo affixed to the entrance to Knightsbridge Underground station]:*

"JusticeForNovikova supporters remain active around the neighbourhood of Rakhat Aliyev's accomplices

"Our #JusticeforNovikova stickers are still appearing around London.

"We get reports of sticker sightings occasionally. A supporter sent in this photo of our logo that someone had placed at the Knightsbridge underground station earlier this month.

"The location is noteworthy, because Knightsbridge is the closest tube stop to Lowndes Square, home of Rakhat Aliyev's accomplices Issam Hourani and Devincci Hourani.

"The Hourani brothers owned the flat where Anastasiya Novikova was held captive and killed in 2004."

28.     *[Posted on 21 November 2014 under the headline]* **"CNN shows our London protest video on Report":**

"For the second time since July, CNN has hosted a video of our protests to bring the murderers of Anastasiya Novikova to justice.

"The latest video is of our November 16 protest outside the Lebanese Embassy in London. #JusticeForNovikova activists attempted to deliver a letter to the Lebanese Ambassador, but were stopped by police and warned that they would be arrested.

*[A photograph of 'protesters' holding banners and placards including with images of the Claimant]*

29.     All of the online publications from Defendants' Campaign on the various websites, including by way of illustration, Facebook, YouTube and Twitter assert that Plaintiff was complicit in the abduction, false imprisonment, torture, rape and murder of Anastasiya Novikova in Beirut in 2004, and in the kidnap of Ms. Novikova's daughter.

30.     All of the online publications from Defendants' Campaign assert that, following Ms. Novikova's murder, the Plaintiff sought to cover up the crime, including by helping remove Ms. Novikova's body from Lebanon to Kazakhstan for burial in secret.

31.     All of the postings from Defendants' Campaign assert that Plaintiff has evaded and continues to evade justice for these crimes by hiding in London.

**Defendants Blair and Psybersolutions maintenance of the websites**

32.    Defendant Blair also goes by the name of Allison Van Over, and Ms. Van Over is registered as the individual responsible for the Justice for Novikova website.

33.    Defendant Psybersolutions is registered as the organization responsible for the website Justice for Novikova.

34.    The IP address used for establishing the Justice for Novikova website (98.204.52.170) belongs to Defendants Blair and/or Psybersolutions.

35.    On numerous occasions, the Rakhat Aliyev Facebook page has been administered from the same IP address (98.204.52.170) used to establish the Justice for Novikova website.

36.    "Valentin Katayev" is registered as the individual responsible for the Rakhat Aliyev website and is one of a number of fake personas involved in Defendants' Campaign, such as Melissa Van Buren.

37.    The Justice for Novikova and the Rakhat Aliyev websites were created and have been maintained by the same person or persons.

38.    On the Justice for Novikova website, the Rakhat Aliyev website is listed as an "additional resource."

39.    All but one of the comments on the Justice for Novikova website were attributed to either Melissa van Buren or Valentin Katayev.

40.    The social media channels and the websites are interlinked and share features and links showing that the social media channels were created and have been maintained by those responsible for the Justice for Novikova and the Rakhat Aliyev websites.

41.     The Justice for Novikova website contains the same videos as the YouTube channel and the same photographs and video as the Justice for Novikova Facebook page.

42.     The Justice for Novikova website contains links to the RakhatAliyev website, the Justice for Novikova Facebook page, the Prosecute Aliyev Facebook page, the YouTube channel, the Justice for Novikova Twitter account and the Prosecute Aliyev Twitter account.

43.     The Justice for Novikova Facebook page uses the identical graphic design as the Justice for Novikova website.

44.     The Prosecute Aliyev Twitter account uses the identical graphic design and logo as the Rakhat Aliyev website, and has tweeted links to the photographic and video material used across Defendants' Campaign.

45.     The Justice for Novikova Twitter account uses the identical graphic design and logo as the Justice for Novikova website, and has tweeted links to the photographic and video material used across Defendants' Campaign.

**Defendants Planning and Staging of the Campaign Demonstrations**

46.     In or around May and June 2014, Defendants Blair and Psybersolutions instructed and agreed to pay Defendants McCarthy and Thomson to organize the Campaign including by carrying out "social networking strategy and consultancy" and computer programming.

47.     On or around May 20, 2014, Defendant Thomson contacted an individual and his company in London and retained his services to prepare the printing, storage and transport of the banners and placards to be used in a "demonstration" due to take place on June 19, 2014, and to film the demonstration.

48.     On or around June 16, 2014, Defendant Thomson engaged the services of an events and marketing company specializing in the organization of "flash mobs," and instructed

them to organize a group of people to attend and demonstrate at the London home of Plaintiff's brother.

49.   Defendant Thomson falsely informed the events and marketing company that Plaintiff and his brother had admitted to murdering Anastasiya Novikova and that the occupants of 10 Lowndes Square, the London home of plaintiff's brother, were sympathetic to the "cause" that was to be espoused by the "demonstrators."

50.   On or around June 18, 2014, Defendant Blair instructed Defendants McCarthy and Thomson in the staging of the June 19th Event. Following the fake demonstration on 19 June 2014, Defendants sought to engage the same events and marketing company to organize further events but the events and marketing company refused.

51.   Defendants were able to find other contractors in London willing to organize the further events and, on November 16, 2014, using the same banners and placards as had been used for the June 19, 2014 demonstration outside the London home of plaintiff's brother, further events were staged in Hyde Park and outside the Lebanese Embassy in London.

## COUNT I

### (Conspiracy to Defame)

52.   Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

53.   Various websites and social media sites were established and have been operated and continue to operate under the control of Defendants Psybersolutions, Blair and McCarthy as part of a conspiracy to defame Plaintiff by portraying him as a criminal who participated in the cover up of the rape, torture, drugging and murder of a young woman.

54.    All of the Defendants conspired to defame Plaintiff by organizing paid actors to hold demonstrations and be filmed with placards with pictures of Plaintiff with the word "Murderer" written over his head in front of the London home of Plaintiff's brother on June 19, 2104.

55.    All of the Defendants conspired to defame Plaintiff by organizing paid actors to hold demonstrations and be filmed with placards with pictures of Plaintiff with the word "Murderer" written over his head in Hyde Park, London and outside the Lebanese Embassy in London on November 16, 2014.

56.    Defendants participated in these unlawful acts and the overt acts in furtherance of the common scheme and civil conspiracy to defame Plaintiff.

57.    Defendants conspired with persons acting on behalf of the Government of Kazakhstan to intentionally publish and cause the false statements quoted in this Complaint as a means of discrediting Plaintiff in the eyes of Western authorities and the media.

58.    Defendants did not act negligently in Defendants' Campaign and in their common scheme and civil conspiracy to defame Plaintiff.

59.    Defendants intentionally participated in Defendants' Campaign and in their common scheme and civil conspiracy to defame Plaintiff.

60.    Plaintiff suffered "special harm" by being branded as a murderer by Defendants in Defendants' Campaign and in their common scheme and civil conspiracy to defame Plaintiff.

61.    Defendants are liable on this Count and all following Counts in this Complaint to Plaintiff for compensatory damages and reasonable attorneys' fees, expenses, and costs in amounts to be determined at trial and all other available relief.

62.    Defendants' Campaign has caused damages to Plaintiff in the District and throughout the world wherever the Campaign is disseminated.

## COUNT II

### (Defamation)

63.    Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

64.    Defendants' Campaign has caused, is causing, and will cause Plaintiff to suffer injury to his standing, to his reputation and good name; and will continue to hold Plaintiff up to public scorn, hatred and ridicule.  Plaintiff worked hard his entire life to build his reputation.

65.    Defendants' Campaign injures Plaintiff in his community standing and lowers him in the estimation of the community.  Defendants' Campaign makes Plaintiff appear odious, infamous, or ridiculous.

66.    Defendants' Campaign has had, and is having a seriously damaging effect on the reputation of Plaintiff because, as a result of the continued publication of these allegations, various online blogs are now commenting on the original publications and repeating these allegations on countless additional online blogs and articles.

67.    Defendants' Campaign injures Plaintiff in his trade, profession, business community standing and lowers him in the estimation of the business community.

68.    Defendants' Campaign caused Plaintiff to lose numerous business opportunities and to have his businesses damaged because of the actions of Defendants.

69.    Defendants' Campaign has caused damages to plaintiff in the District and throughout the world wherever the Campaign is disseminated.

## COUNT III

(Defamation - Actual Malice by Defendants )

70.   Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

71.   Plaintiff is not a public figure as that term is understood in the law of defamation.

72.   Plaintiff does not have to prove actual malice by Defendants as required by public figures suing for defamation.

73.   Even though Plaintiff is not a public figure, actual malice by Defendants is established by their intentional, reckless, unfounded publication on the internet of videos, photographs and statements on various websites and Twitter, which is intended to make Plaintiff appear odious, infamous, or ridiculous.

74.   Defendants' Campaign has caused damages to Plaintiff in the District and throughout the world wherever the Campaign is disseminated.

## COUNT IV

(Defamation – Reckless Disregard/Malice by Defendants)

75.   Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

76.   The questions and innuendos contained in Defendants' Campaign were published by Defendants with reckless disregard as to their truth.

77.   The statements in Defendants' Campaign concerning Plaintiff's alleged criminal conduct  are false.

78.   The statements in Defendants' Campaign concerning Plaintiff's alleged criminal conduct were widely published and were not privileged in any manner.

79.   Defendants either knew or recklessly disregarded the fact that Plaintiff has not engaged in any criminal conduct.

80.   The questions, innuendoes and statements in Defendants' Campaign were published by Defendants with reckless disregard of their truth or falsity or with malice.

81.   Defendants' Campaign has caused damages to Plaintiff in the District and throughout the world wherever Defendants' Campaign is disseminated.

## COUNT V

### (False Light Claim)

82.   Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

83.   Defendants' Campaign places Plaintiff in a false light which would be highly offensive to a reasonable person.

84.   Defendants Campaign demonstrates Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

85.   Defendants' Campaign directly and by implication and innuendo suggests the existence of other facts about Plaintiff that are entirely false.

86.   The statements in Defendants Campaign concerning Plaintiff's businesses were widely published and were not privileged in any manner.

87.   Defendants acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

88.     Defendants' Campaign has caused damages to Plaintiff in the District and throughout the world wherever the Campaign is disseminated.

## COUNT VI

### (Emotional Distress)

89.     Plaintiff incorporates by reference into this Count all of the allegations appearing in the preceding paragraphs in this Complaint as if set forth in full.

90.     Defendants' Campaign was intended to cause Plaintiff emotional distress.

91.     Defendants' Campaign was undertaken without just cause or excuse, and went beyond all the bounds of decency, purposely causing a disturbance of Plaintiff's mental and emotional tranquility of an acute nature.

92.     Plaintiff suffered "special harm" by being branded as a murderer by Defendants in Defendants' Campaign, which was intended to cause Plaintiff emotional distress.

93.     As a result of Defendants' Campaign, Defendants are subject to liability in damages for such mental and emotional distress.

94.     Defendants' Campaign has caused damages to Plaintiff in the District and throughout the world wherever the Campaign is disseminated.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants, jointly and severally, on all Counts for a sum to be determined but to be at least one hundred million dollars ($100,000,000), plus punitive damages and such other and further relief as this Court finds just and equitable.

## JURY TRIAL

Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully submitted,

**MELITO & ADOLFSEN P.C.**

Louis G. Adolfsen (DC Bar #1013192)
S. Dwight Stephens (DC Bar # 406176)
Rania Shoukier
*Of Counsel*
233 Broadway
New York, New York 10279
Telephone: (212) 238-8920
Facsimile:  (212) 238-8999
E-mail: lga@melitoadolfsen.com
E-mail: Shoukier@arablegalusa.com

112636